UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREAKING CODE SILENCE,<br><br>                                  Plaintiff,<br><br>        v.<br><br>CHELSEA PAPCIAK aka FILER, et al.,<br><br>                                  Defendants. | Case No. 21-cv-00918-BAS-DEB<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br>**(ECF Nos. 35, 36)** |

Presently before the Court are Defendant Jennifer Walker's Motion to Dismiss (ECF No. 35) and Defendants' Jenna Bulis, Chelsea Filer, Martha Thompson, and BreakingCodeSilence, Inc.'s Motion to Dismiss (ECF No. 36). Plaintiff filed Oppositions and Objections to the Motions. (ECF Nos. 39–42.)

The Court finds these matters suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS** the Motions to Dismiss.

## BACKGROUND

This lawsuit is a trademark and organizational dispute between various parties involved in a movement to raise awareness of problems in the troubled teen industry. The crux of the dispute is: Who—if anyone—has the right to control the use of the phrase BREAKING CODE SILENCE? Because this case is at the motion to dismiss phase, the Court must accept Plaintiff's factual allegations as true and interpret them in the light most

favorable to Plaintiff. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).

<u>Plaintiff BCS</u>. Turning to those allegations, Plaintiff Breaking Code Silence ("BCS") "is a nonprofit public benefit corporation incorporated by survivors of institutional child abuse and activists." (Second Am. Compl. ("SAC") ¶ 12, ECF No. 19.) "The mission of BCS is to raise awareness of the problems in the troubled teen industry and the need for reform." (*Id.*)

"One of the volunteers of BCS started branding BREAKING CODE SILENCE in October of 2010 with his books, blogs, posts, and speaking engagements aimed at helping survivors of institutional child abuse." (SAC ¶ 14.) This branding continued to be used in the community, including for websites and articles. (*Id.*) BCS claims "[t]hese rights have been assigned to BCS," but does not provide any details concerning the assignment, such as who assigned the rights. (*Id.*)

"In 2019, a group of survivors of troubled teen residential facilities joined together to formalize BCS as an organization." (SAC ¶ 16.) The group started with informal meetings and then established a further presence through a website, online community, social media accounts, email account, and webhosting account. (*Id.* ¶¶ 15–16.) The website and social media account handles all include part or all of the phrase "breakingcodesilence." (*See id.* ¶ 16 (listing various accounts).)

"The BCS group started applying for grants by October 15, 2020," including from the Conrad N. Hilton Foundation. (FAC ¶¶ 17–18.) On March 22, 2021, BCS was incorporated with the California Secretary of State. (*Id.* ¶ 19.)

"BCS uses the trademarks BREAKING CODE SILENCE, BCS, and #breakingcodesilence to brand its services, mission, and publications." (SAC ¶ 21.) It has several trademark applications pending with the U.S. Patent and Trademark Office ("USPTO"). (*Id.*)

<u>Defendants' Involvement</u>. BCS alleges Chelsea Papciak (also known as Chelsea Filer), Jennifer Walker, Jenna Bulis, and Martha Thompson "were involved with BCS from

2019 through early 2021." (SAC ¶ 24.) In early 2021, "these Defendants publicly separated themselves from BCS and no longer actively participate in the organization." (*Id.*) However, these Defendants are using the BREAKING CODE SILENCE mark without Plaintiff BCS's permission, including through Defendants Filer and Bulis representing themselves as officers at Breaking Code Silence. (*Id.* ¶¶ 25–27.)

In addition, "Defendants have taken many of Plaintiff's social media and email accounts and are holding them hostage and will not return them to Plaintiff despite numerous requests." (SAC ¶ 28.) In April 2021, Defendants Bulis and Filer "filed a registration for a Florida Profit Corporation by the name of BREAKINGCODESILENCE INC."—which is the final named Defendant. (*Id.* ¶ 42.) "This was done without the authorization of BCS, and after publicly falsely accusing BCS (a nonprofit) of attempting to profit from the troubled teen survivor movement." (*Id.*) Defendants also "continue to make public posts on social media alleging that Plaintiff is committing theft, bullying, and threatening survivors," which "are causing the public to question Plaintiff's integrity." (*Id.* ¶ 40.)

Based on these allegations, BCS brings nine claims, including trademark infringement, unfair competition under the Lanham Act, conversion, and defamation. (SAC ¶¶ 45–107.)[1] Some claims involve all Defendants; others do not. Defendant Walker moves to dismiss the claims against her under Rule 12(b)(6). (Def.'s Mot. to Dismiss ("1st MTD"), ECF No. 35.) Defendants Filer, Walker, Bulis, Thompson, and BreakingCodeSilence, Inc. likewise move to dismiss under Rule 12(b)(6). (Defs.' Mot. to Dismiss ("2nd MTD"), ECF No. 36.)

---

[1] There was a dispute between the parties over whether the Second Amended Complaint is the operative pleading. The Court found it is. (ECF No. 34 (applying Rule 15(a)(2).) Consequently, Defendants Filer, Walker, Bulis, Thompson, and BreakingCodeSilence, Inc.'s request to strike the Second Amended Complaint is not well taken. (2nd MTD 9:12–10:19.)

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Yet, the court does not have to accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**OBJECTIONS**

BCS objects to Defendants' Requests for Judicial Notice and reliance on other extrinsic evidence in their Oppositions. (ECF Nos. 39, 40.) Defendants ask the Court to take judicial notice of: (1) a social media post; and (2) a printout from the USPTO that lists Defendant Filer as one of the original applicants for the BREAKING CODE SILENCE mark. (ECF No. 35-3.) In addition, Defendants' Oppositions rely on declarations from Chelsea Filer and Josh Scarpuzzi, which address BCS's factual allegations and include various exhibits. (ECF Nos. 36-3; 36-4; *see also* 1st MTD 2:25–4:24; 2nd MTD 6:1–8:1.)

At the Rule 12(b)(6) stage, the court may not consider extrinsic matters outside the pleadings without converting the motion to dismiss to a motion for summary

judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Exceptions to this limitation include matters subject to judicial notice. *Id.*

Judicial Notice. Under Federal Rule of Evidence 201(b), the court may judicially notice a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Where a party seeks judicial notice of a document, the Rule 201(b) inquiry is two-fold. First, the court must consider whether the document is from "a source[] whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Second, the court must "consider—and identify—which fact or facts it is noticing from" the document. *Id.* "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.*

A social media post satisfies neither step of the inquiry under Rule 201(b). Hence, the Court denies that request for judicial notice. As for the USTPO item, the Court agrees that the USPTO is a source whose accuracy cannot reasonably be questioned. *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 997 (N.D. Cal. 2014) (noting "USPTO records may be subject to judicial notice"). Defendants rely on the USPTO item to attempt to conclusively establish that all of the individuals on a pending trademark application are joint owners of the disputed trademark. (*See* 1st MTD 3:22–24; 2nd MTD 6:1–5.) That disputed fact is not subject to judicial notice from the USPTO registry. *See Khoja*, 899 F.3d at 999–1002 (explaining the limitations of judicial notice); *see also, e.g.*, *Pinterest*, 15 F. Supp. 3d at 997 ("[W]hile the USPTO records may be subject to judicial notice, they are noticeable only for the limited purpose of demonstrating that the filings and actions described therein occurred on certain dates."). Therefore, the Court denies Defendants' request for judicial notice of the USPTO registry.[2]

---

[2] Defendants also ask the Court to take judicial notice of BCS's California Secretary of State filings. (ECF Nos. 35-3; 36-5.) BCS does not object to this request. (*See* ECF Nos. 39, 40.) Judicial notice of these filings is appropriate for the limited purpose of establishing when BCS was incorporated.

Extrinsic Evidence.  BCS's objection to Defendants' reliance on other extrinsic evidence is well-taken.  The Court's frame of reference is limited under Rule 12(b)(6).  *See Khoja*, 899 F.3d at 998.  The Court does not reference any of this extrinsic information in the Background above because none of the information is being considered to resolve these Motions.  Further, although BCS's Rule 12(f) request to strike this information has merit, the Court declines to remove the information from the docket.  *See* Fed. R. Civ. P. 12(f) (providing the court "may" strike the material); *see also Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

## ANALYSIS

Defendants move to dismiss BCS's Lanham Act trademark infringement, unfair competition, and related federal claims.  (1st MTD 5:21–9:9; 2nd MTD 12:2–15:13.)  These claims all rise and fall with Defendants' argument that BCS fails to allege a protectable interest in the relevant trademarks.  "To establish standing to sue for trademark infringement under the Lanham Act, a plaintiff must show that he or she is either (1) the owner of a federal mark registration, (2) the owner of an unregistered mark, or (3) a nonowner with a cognizable interest in the allegedly infringed trademark."  *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1225 (9th Cir. 2008) (citing 15 U.S.C. §§ 1114(1), 1125(a)).

BCS relies on the second avenue to bring this lawsuit—it argues the entity "is the owner of an unregistered mark."  (Opp'n to 1st MTD 10:11–12.)  BCS alleges "it has common law trademark rights in the[] marks which date back to October 18, 2010." (SAC ¶ 21.)  The issue, then, is whether BCS includes sufficient factual allegations to support this claim.

"To establish common law trademark rights in the absence of federal registration, a plaintiff must plead and prove that it is the senior user of the mark with sufficient market penetration to preclude the defendant from using the mark in a specific geographic

---

*See Inc. v. PacifiCare Life & Health Ins. Co.*, 804 F. App'x 497, 500 (9th Cir. 2020) (considering corporate Statements of Information filed with the California Secretary of State).

market." *Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1118 (S.D. Cal. 2014). "A fundamental principle of trademark law is first in time equals first in right." *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1093 (9th Cir. 2004). "One who first uses a distinct mark in commerce thus acquires rights to that mark." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142 (2015); *accord Derringer v. Plate*, 29 Cal. 292, 294–95 (1865) (providing, at common law, the right to a trademark accrues from adoption and use). "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

The Complaint alleges that in 2010—before BCS existed—a volunteer started using the BREAKING CODE SILENCE mark "with his books, blogs, posts, and speaking engagements aimed at helping survivors of institutional child abuse." (SAC ¶¶ 12, 16, 19.) At common law, this individual would be the owner of the mark who has the right to enjoin junior users. *See, e.g.*, *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."). BCS, of course, is the named Plaintiff—not this unnamed individual.

BCS further alleges that the mark "was used in the community from 2010 through the present for books, posts, speaking engagements, website sand articles." (SAC ¶ 14.) Finally, BCS adds: "These rights have been assigned to BCS." (*Id.*)

Preliminarily, BCS does not plausibly allege that it is the owner of the mark through its own use. It does not claim to be the first one to commercially use the mark in the relevant market. As mentioned, BCS alleges an individual first used the mark in 2010 for "books, blogs, posts, and speaking engagements," but BCS was not incorporated until 2021. (SAC ¶¶ 14, 19.) And although an individual "volunteer of BCS" may have rights to the mark, BCS is a separate entity. "Ordinarily, a corporation is regarded as a legal

entity separate and distinct from its stockholders, officers and directors." *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 993 (1995); *see also City of Bakersfield v. W. Park Home Owners Assn. & Friends*, 4 Cal. App. 5th 1199, 1211 (2016) ("However, the Corporation was formed as a separate legal entity, a public benefit corporation."); 2 McCarthy on Trademarks and Unfair Competition § 16:36 (5th ed. 2021) (distinguishing between corporate and individual ownership of a mark). Hence, additional facts are needed to show BCS owns the unregistered mark.

To that end, BCS alleges the common law trademark rights stemming from 2010 "have been assigned to BCS." (SAC ¶ 14.) Defendants argue this assignment allegation is a legal conclusion that is insufficient under Rule 12(b)(6). (1st MTD 6:19–7:1; 2nd MTD 12:21–13:7.) *See Iqbal*, 556 U.S. at 678 (explaining the court does not have to accept "legal conclusions" as true). The Court agrees. The term "assignment" has a specific legal meaning, especially in the trademark context. *See, e.g.*, *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 75 (2d Cir. 2013) ("[A]n assignment "is an outright sale of *all rights* in that mark." (quoting 3 McCarthy on Trademarks and Unfair Competition § 18:1 (4th ed. 2012))). The Complaint does not allege who transferred the rights to BCS, the date of the assignment, the scope of the assignment, or any other information. (SAC ¶ 14.) Without any supporting factual allegations, BCS does not plausibly allege it owns the unregistered mark through an assignment, which would give it the right to preclude Defendants' alleged junior use.

Moreover, the Court will not wade into any other theories of trademark ownership or standing to sue for infringement, as none were adequately developed in BCS's Oppositions. BCS must connect the dots for the Court. Indeed, BCS asks for leave to amend, stating it can provide more information, including "the documents and additional details to support the assignment." (Opp'n to 1st MTD 10:25–11:7; Opp'n to 2nd MTD 10:10–20.) Consequently, the Court dismisses the trademark-related federal claims (SAC ¶¶ 45–70) with leave to amend. *See* Fed. R. Civ. P. 15 (a)(2) ("The court should freely give leave when justice so requires.").

* * *

Having dismissed BCS's federal claims, the Court—at this time—declines to exercise supplemental jurisdiction over BCS's assortment of state law claims. 28 U.S.C. § 1367 (c)(3).[3]  If BCS files an amended complaint, Defendants can renew their arguments concerning these claims.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 35, 36). Specifically, the Court dismisses BCS's first, second, third, and fourth claims (SAC ¶¶ 45–70) with leave to amend. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses them without prejudice. If BCS chooses to file a Third Amended Complaint, it must be filed no later than **March 4, 2022**.

**IT IS SO ORDERED.**

**DATED: February 11, 2022**

Hon. Cynthia Bashant
United States District Judge

---

[3] The Court only has supplemental jurisdiction over these state law claims because there is not complete diversity. (*See* SAC ¶ 6.) *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).